# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2959 | **DATE** | 12/13/2004 |
| **CASE TITLE** | Guadalupe Lemos vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment (5-1) is denied. Defendant's motion for summary judgment (6-1) is granted. Court enters judgment in favor of defendant and against plaintiff. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 1 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 7 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUADALUPE LEMOS,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE BARNHART, COMMISSIONER<br>OF SOCIAL SECURITY,<br><br>Defendant. | No. 04 C 2959<br>Senior Judge Paul E. Plunkett<br><br>DOCKETED<br>DEC 1 4 2004 |

## MEMORANDUM OPINION AND ORDER

Through a Federal Rule of Civil Procedure 56 motion for summary judgment, Guadalupe Lemos ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423. Lemos claims that the Administrative Law Judge's ("ALJ") decision to deny her benefits should be reversed and set aside because the ALJ erred in finding that Lemos's testimony regarding her functional limitations were not "fully credible." The Commissioner has also filed a Rule 56 motion for summary judgment, arguing that substantial evidence in the record supports the ALJ's finding. For the following reasons, we deny Lemos's motion for summary judgment and grant the Commissioner's motion for summary judgment.

7

## Facts

Guadalupe Lemos is a forty-six year old woman with a ninth-grade education. Her work history consists primarily of factory assembly and packing jobs requiring little physical exertion. She has not been gainfully employed since her employer closed in November 2001. She claims that at that time her physical ailments had become so acute she was unable to look for another job. Lemos claims to have been disabled since June 28, 2000, the "disability onset date."

## Medical Evidence

On December 18, 2001, Lemos went to the emergency room with hypotension. An examination revealed she had coronary disease and may have suffered a recent heart attack. Doctors noted that she was diabetic but was not complying with her prescribed diet and medication. Her report also showed that she had recently been treated for a soft tissue leg infection.

Lemos returned to the hospital on February 21, 2002, complaining of chest pain. She underwent bypass surgery and surgery to repair a ventricular pseudoaneurysm. She recovered well from her operations, without complications. The doctors recommended Lemos take Coumadin, a blood thinner, as part of her followup treatment.

In March 2002, two medical consultants reviewed Lemos's medical records on behalf of the Social Security Administration ("SSA") and submitted a residual functional capacity assessment. These doctors found Lemos was able to stand or walk for up to six hours in an eight-hour workday. Despite her alleged shoulder pain, the doctors concluded Lemos could lift objects weighing ten pounds or less with some frequency during the day. They also found that she had no visual limitations based on her records.

Records from Dr. Jorge E. Brunelle, who routinely treated Lemos for her diabetes, reveal she complained about shoulder pain on January 30, 2002 but refused to get an MRI because she was awaiting a medical card. Lemos complained of blurry vision on April 9, 2002, but the doctor marked her vision normal, as he did on every other report. Her diabetes was first listed as uncontrolled on a May 10, 2002 report, and then again in several subsequent reports through March 11, 2003. Then, the diabetes was listed as controlled in the ensuing months, but was again listed as uncontrolled following her September 4, 2003 visit, the final visit before her hearing with the ALJ.

Dr. Pardeep Sood examined Lemos on August 11, 2003, and reported that she told him she felt fairly well except for some lightheadedness in the morning before taking her insulin. He diagnosed her with early diabetic nephropathy but noted that her function was stable.

Significantly, in none of Lemos's records did any of her treating physicians opine that she was unable to work.

### Lemos's Hearing Testimony

At the hearing, Lemos testified that her diabetes makes her extremely fatigued. She has trouble walking or even standing for brief periods. Every morning her vision becomes blurry and she must sit down to recover and regain her sight. She said she has difficulty lifting grocery bags, and doesn't have the strength to lift her month-old grandchild. Despite her fatigue, severe headaches keep her from sleeping through the night. And while sitting down clears some of her symptoms, sitting for too long can make her left leg feel numb.

Lemos testified that her heart also continues to plague her. Three times a day she experiences a tightness in her chest that lasts for up to thirty minutes. She also testified that she was taking Coumadin seven times a day.

### Medical Expert Testimony

Dr. Carl Leigh, a medical expert testified that, based on his review of Lemos's records, none of her ailments met any of the SSA listing of impairments. The doctor testified that Lemos's records showed no evidence of "any abnormalities of gait or station, gross or fine dexterity." According to the doctor's judgment, Lemos should not perform work requiring more than light physical exertion. He also felt that because of her heart disease, she should not perform work that exposed her to extreme heat or cold; because of her insulin treatments, she should avoid working at unprotected heights; and because of the insulin and the Coumadin, she should avoid working near hazardous machinery or operating commercial vehicles.

### Rehabilitation Consultant's Hearing Testimony

GleeAnn L. Kehr, a rehabilitation consultant, testified that Lemos was an unskilled factory worker used to performing jobs requiring light to sedentary levels of exertion. She testified that if Lemos's claims of extreme fatigue were true and if she required periodic breaks throughout the day, she would not be able to sustain meaningful work. However, without that impediment, Kehr stated there were between five and six thousand jobs at the sedentary level and another five thousand at the light work level. Limiting those jobs to positions where Lemos would not be exposed to hazardous

machinery, Kehr testified there would still be over three thousand sedentary and three thousand light work positions available.

## The ALJ's Decision

In a decision dated October 30, 2003, ALJ Dennis Greene determined that, for the purposes of disability benefits, Lemos was not disabled. The ALJ found that Lemos's testimony was not fully credible. He found no medical evidence in the record revealing any restrictions in her ability to walk or stand. He noted her recorded non-compliance with her diabetes treatments. He also observed that she had recovered satisfactorily from her heart surgery. The ALJ placed significant weight on the state agency residual functional capacity assessment that found her able to perform light work, particularly because no contradictory medical opinions were entered into the record. Based on these considerations and findings, the ALJ determined that Lemos was able to perform her past work as a factory assembler and packer and thus was not disabled.

## The Legal Standard

Our review of final decisions of the Commissioner (here, the ALJ) is deferential.[1] The Social Security Act establishes that findings as to any fact are conclusive if supported by substantial evidence and no error of law occurred. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (internal citation omitted). We do not reevaluate

---

[1] The ALJ's decision is the final decision of the Commissioner because the SSA Appeals Council denied Lemos's request for review of the ALJ's decision. (R. 2.) 20 C.F.R. § 404.981.

the facts, reweigh the evidence or substitute our own judgment for that of the ALJ. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## Discussion

The SSA regulations provide for a five-step inquiry to determine whether a claimant is disabled. The following considerations must be made in reaching a determination: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy. *Knight*, 55 F.3d at 313. Where, as here, a claimant does not have a severe impairment listed by the SSA but is able to show that she cannot perform her past work, the burden shifts to the SSA to establish that the claimant is capable of performing other work in the national economy. *See id.* The ALJ found that Lemos could not satisfy step four because she is able to perform her past work, which involved light to sedentary levels of physical exertion. The issue before us is whether the ALJ's decision was supported by substantial evidence.

Lemos's primary argument is that the ALJ erred in assessing the credibility of Lemos's testimony. An ALJ's credibility determination is accorded great deference; we will not reverse it unless a claimant can show it was "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, the ALJ's decision must go beyond a mere conclusory statement that a claimant's testimony was not credible. Social Security Ruling 96-7p (1996).

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for the weight. *Id.*

Such specificity is required in order to "give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." *Id.* Even where a claimant testifies about symptoms not fully supported by the objective medical evidence, the ALJ must sufficiently weigh her testimony, and must consider the claimant's daily activity, the duration, frequency, and intensity of pain, the precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication and any functional restrictions. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).

In his decision, the ALJ acknowledges that "[i]n making this assessment, I must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (R. 12.) He then considers Lemos's symptoms:

> She stated that she is unable to work due to her heart problems and her diabetes. She is always very tired. She alleged that she has difficulty standing and walking for more than [five] minutes. Although she lives with her daughter and grandchildren, she stated that she is unable to perform any household chores and cannot pick up her grandchildren. She takes insulin twice a day. She stated that her left leg often is swollen and numb. (R. 12.)

The ALJ's credibility assessment consists of two sentences: "In reaching the decision in this case, I find that the claimant's testimony in this matter was not fully credible." (R. 13.); and "I find that the claimant's testimony as to her functional limitations was not fully credible for the reasons set forth in the body of the decision." (R. 15.) Plaintiff argues that these conclusory statements do not reveal any evidence of how much weight the ALJ gave to Lemos's testimony.

However, where the record as a whole supports the ALJ's finding, we need not overturn a decision that seemingly gives a Plaintiff's testimony short shrift. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003); *Manney v. Barnhart*, 320 F.Supp. 2d 681, 697 n.29 (N.D. Ill. 2004). Here, the

ALJ weighed Lemos's testimony against the objective medical evidence and found no support for finding her disabled. As he notes, the medical record contains no evidence that Lemos complained of or had trouble with her ability to walk or stand. She had been non-compliant with her diabetes treatments in the past and she appears to have recovered well from her heart surgery. We have reviewed the record and find that the objective medical evidence supports these findings. Because the record as a whole supports the ALJ's decision, we do not find that the ALJ was "patently wrong" in finding Lemos is not disabled.

Lemos also contends that the ALJ erred in not considering her visual impairment. The ALJ's decision does not mention her testimony regarding her blurry vision. At the hearing, the ALJ did not specifically ask the medical or vocational experts to comment on that alleged symptom. However, we do not find this a cause for reversal. Dr. Leigh, the medical expert, reviewed the entire file and listened to Lemos's testimony. The doctor testified that even if Lemos's testimony were taken as true, she would be capable of performing sedentary work, provided she did not work in extreme heat or cold, or at great heights, or near hazardous machinery.

While the medical expert was able to review Lemos's medical file, there is no indication that the vocational expert did. When a vocational expert does not have the opportunity to review the medical reords, the ALJ is required to present her with hypothetical situations that include all limitations supported by medical evidence in the record. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Lemos insists, therefore, that the ALJ should have posed a hypothetical to the vocational expert based on a worker of Lemos's age, education and work history who suffered from blurry vision.

We disagree for two reasons. First, as Defendant argues, the medical record does not support a finding that Lemos has trouble with her eyesight. The residual functional capacity assessment found Lemos to be without visual limitations. (R. 247.) Each report from her treating physician, Dr. Brunelle, lists her vision as normal, including the report from April 9, 2002, when she specifically complained about blurred vision. (R. 255–262, 292–304.) Second, the vocational expert did speak to a hypothetical situation encompassing Lemos's complaint. Lemos's testimony on the issue relates her vision problems with her fatigue. She says, "I get tired and my - - sometimes my vision goes away and I have to sit down for a while so my vision comes back again." (R. 40.) The vocational expert listened to the testimony and testified that a person experiencing the kind of fatigue Lemos described could not sustain gainful employment. Thus the issue was considered at the hearing and we do not feel that the ALJ erred in failing to elicit the proper testimony from the medical or vocational experts at the hearing.

## Conclusion

We find that the Commissioner's decision that Lemos is not disabled is supported by substantial evidence. Accordingly, the Commissioner's motion for summary judgement is granted and Lemos's motion for summary judgment is denied. This is a final and appealable order.

ENTER:

_____
SENIOR UNITED STATES DISTRICT JUDGE

DATED: DEC 13 2004

# United States District Court
## Northern District of Illinois
Eastern Division

| | |
|---|---|
| Guadalupe Lemos | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 04 C 2959 |
| Jo Anne Barnhart | |

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☒ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Court enters judgment in favor of defendant Jo Anne Barnhart and against plaintiff Guadalupe Lemos. This is a final and appealable order.

Michael W. Dobbins, Clerk of Court

Date: 12/13/2004

*Carol Wing*, Deputy Clerk